IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| **VERONICA HEADS,** | )<br>)<br>) |
| **Plaintiff,** | )<br>)<br>) Case No.: |
| v. | )<br>) |
| **PARADIGM INVESTMENT GROUP, LLC,** | ) **JURY DEMANDED**<br>)<br>) |
| **Defendant.** | )<br>) |

## COMPLAINT

**COMES NOW** Plaintiff, Veronica Heads ("Plaintiff"), by and through her undersigned counsel of record, and files this complaint against Defendant, Paradigm Investment Group, LLC ("Defendant"). As grounds for this complaint, Plaintiff states the following:

### INTRODUCTION

1. This suit is authorized and brought to secure protection of, and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), and 42 U.S.C. § 1981.

### JURISDICTION AND VENUE

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3. The unlawful employment practices described herein were committed in Baldwin County, Alabama and, accordingly, venue lies in the United States District Court for the Southern District of Alabama, Mobile Division pursuant to 28 U.S.C. § 1391(b).

### PARTIES

4. Plaintiff is a citizen of the United States of America, who currently resides in Baldwin County, Alabama.

Case 1:20-cv-00284-TFM-M   Document 1   Filed 05/22/20   Page 2 of 13   PageID #: 2

5. Plaintiff is over the age of nineteen (19) years.

6. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b) of Title VII, in that it engages in an industry affecting commerce, and has employed more than fifteen (15) people for the requisite duration under Title VII.

7. Defendant was Plaintiff's employer at all times relevant to this Complaint.

8. Defendant is a foreign limited liability company formed in the State of California, with a principal address of 16236 San Dieguito Road, Suite 4-19, Rancho Santa Fe, California 92067.

9. Defendant conducts substantial business in the State of Alabama.

## ADMINISTRATIVE REMEDIES

10. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant.

11. Charge number 420-2019-02427 (the "Charge") was filed on May 31, 2019. (Attached hereto as "**Exhibit A**").

12. Plaintiff alleged retaliation and discrimination based on sex and race.

13. On February 26, 2020, the EEOC posted Plaintiff's Right to Sue ("RTS"). (Attached hereto as "**Exhibit B**").

14. Plaintiff did not receive notice that a copy of the RTS had been posted until April 22, 2020.

15. Plaintiff has now filed her Complaint within ninety (90) days of her receipt of the Right to Sue for the Charge, and has, therefore, exhausted all administrative remedies with respect to the Charge before filing her claims with this Court.

## FACTS

16. Plaintiff re-alleges and incorporates paragraphs one (1) through fifteen (15) as if fully set forth herein.

17. Defendant owns various fast food restaurants, including Hardees and Burger King.

18. On November 17, 2018, Defendant hired Plaintiff as a District Manager ("DM").

19. On January 1, 2019, Plaintiff began managing three (3) Hardees restaurants, located in Gulf Shores, Loxley, and Foley, Alabama.

20. However, in the first month, Plaintiff's restaurants lost two (2) general managers ("GM"), three (3) shift leads, and a substantial number of crew members.

21. Thus, in addition to Plaintiff's DM duties, Plaintiff also served as the GM for two (2) restaurants.

22. Defendant's Vice President ("VP"), in-house counsel, and Director of Human Resources ("HR"), Christopher Wollan ("C. Wollan") also changed the store hours for two (2) restaurants unexpectedly and without explanation.

23. On March 13, 2019, Defendant hired Mr. Dominque Roberts (Caucasian male) ("Roberts") as Director of Operations.

24. Plaintiff reported directly to Roberts.

25. Roberts treated Plaintiff differently than Caucasian employees.

26. Roberts did not communicate with Plaintiff regarding the maintenance, function, and staffing of her restaurants.

27. As DM, Plaintiff adhered to a specified budget.

28. Roberts ordered maintenance supplies and services without discussing or otherwise informing Plaintiff.

3

29. As a result, Roberts generated significant bills and exceeded Plaintiff's budget.

30. The items and/or services ordered by Roberts were unnecessary.

31. Roberts ordered a new manhole cover and surrounding poles, which cost approximately five thousand dollars ($5,000.00).

32. When Plaintiff first became DM, she had a number of the ovens repaired.

33. Plaintiff was waiting until the next budget period to repair a final oven because she had already used the maintenance budget for the current period.

34. However, without consulting Plaintiff and instead of repairing the oven, Roberts ordered a new oven.

35. As a result, Roberts exceeded Plaintiff's maintenance budget.

36. Roberts also excluded Plaintiff from staffing decisions.

37. Roberts would make decisions regarding staff schedules without Plaintiff's input and/or knowledge.

38. Plaintiff informed her GMs of restaurant hours and the number of staff members required for operation.

39. However, Roberts contradicted Plaintiff and told the GMs they could do whatever they wanted with their restaurants.

40. Roberts also transferred managers and staff out of Plaintiff's restaurants.

41. When Plaintiff first became DM, her restaurants were significantly understaffed.

42. Plaintiff thereafter increased the staff and resolved a number of related issues.

43. Roberts' decisions to transfer employees out of Plaintiff's restaurants created additional staffing issues.

44. Plaintiff did not become aware a staff member(s) had been transferred until she received a report regarding an employee not working a scheduled shift.

45. Roberts' interference with Plaintiff's management efforts inhibited Plaintiff's productivity and efficiency.

46. C. Wollan and owner, Don Wollan ("D. Wollan"), thereafter called Plaintiff and asked why the restaurants were understaffed.

47. Plaintiff informed C. Wollan and D. Wollan that Roberts interfered with staffing decisions and refused to communicate.

48. C. Wollan and D. Wollan then spoke with Roberts.

49. Roberts blamed Plaintiff for the staffing issues.

50. C. Wollan and D. Wollan subsequently blamed Plaintiff for the staffing issues.

51. Plaintiff called C. Wollan and D. Wollan on numerous occasions, but did not receive any response.

52. On April 2, 2019, Plaintiff met with Roberts in hopes of addressing the aforementioned issues.

53. Roberts would not listen to Plaintiff's concerns.

54. Roberts also attempted to get Plaintiff to quit as DM.

55. Roberts told Plaintiff, "Wouldn't you love it if you just quit?" and "You can just quit."

56. Roberts also told Plaintiff, "I am the top of the food chain, anything I want to do, I can do."

57. On April 2, 2019, after Plaintiff's meeting with Roberts, Plaintiff left voicemails for C. Wollan and D. Wollan.

58. In the voicemails, Plaintiff stated that she believed Roberts was discriminating against her.

59. Plaintiff told C. Wollan and D. Wollan that Roberts did not mistreat white employees.

60. C. Wollan and D. Wollan did not return Plaintiff's phone calls.

61. On April 5, 2019, at 9:54 a.m., Plaintiff emailed C. Wollan and D. Wollan.

62. Plaintiff stated that Roberts would not communicate with her, made decisions without her awareness or input, and that she was "feeling discrimination."[1]

63. At 1:17 p.m., C. Wollan replied to Plaintiff's email and stated he and D. Wollan would call her on April 6, 2019 between 4:00 p.m. and 5:00 p.m.

64. Roberts thereafter told Plaintiff he would meet with her on April 6, 2019.

65. At 2:51 p.m., Plaintiff responded to C. Wollan's email and asked if the meeting was to fire her "because [she] spoke up [and opposed discrimination]."

66. At 4:35 p.m., C. Wollan responded to Plaintiff's email and stated that D. Wollan was jetlagged and that C. Wollan would call into Plaintiff's meeting with Roberts on April 6, 2019.

67. At 6:06 p.m., D. Wollan emailed Plaintiff and stated that "We don't terminate people for speaking up. We terminate them for lack of performance."

68. On April 5, 2019, only three (3) days after Plaintiff first reported discriminatory animus, and less than twenty-four (24) hours after Plaintiff's second report, Defendant terminated Plaintiff's employment.

69. Defendant cited performance issues as the reason for Plaintiff's termination.

---

[1] During the EEOC process, Defendant altered the noted email to exclude the statement regarding discrimination.

70. Prior to Plaintiff's termination, she had not been disciplined for any performance issues.

71. Defendant did not mistreat and/or terminate a Caucasian DM who failed two (2) audits, ran her stores at a high labor cost, and received two (2) failing health department scores.

72. Therefore, Defendant subjected Plaintiff to discrimination because of her race (African American) and retaliated against her for opposing such racial discrimination.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

73. Plaintiff is African American and a member of a protected class.

74. Plaintiff was, and is, a qualified employee, able to perform the essential functions of her job.

75. Roberts is a Caucasian individual.

76. After Roberts was hired by Defendant, he refused to communicate with Plaintiff regarding the maintenance, function, and staffing of her restaurants.

77. In managing the restaurants, Plaintiff was required to adhere to a specified budget.

78. Roberts ordered unnecessary maintenance supplies and services without discussing or otherwise informing Plaintiff, which generated significant bills and exceeded Plaintiff's budget.

79. Roberts ordered a new manhole cover and surrounding poles, which cost approximately five thousand dollars ($5,000.00).

80. Roberts also ordered a new oven for one (1) of Plaintiff's restaurants.

81. However, Plaintiff had planned to wait until the next budget period to repair the oven because she had already used the maintenance budget for the current period.

82. Roberts also excluded Plaintiff from staffing decisions.

83. Roberts contradicted Plaintiff's instructions to her GMs regarding restaurant hours and staffing.

84. Roberts also transferred managers and staff out of Plaintiff's restaurants, which resulted in the restaurants being understaffed.

85. Plaintiff did not become aware a staff member(s) had been transferred until she received a report regarding an employee not working a scheduled shift.

86. Roberts' interference with Plaintiff's management efforts inhibited Plaintiff's productivity and efficiency.

87. Plaintiff attempted to address the aforementioned issues with Roberts by meeting with Roberts and contacting both C. Wollan and D. Wollan.

88. Instead of addressing the issues created by Roberts, Defendant blamed Plaintiff and, on April 5, 2019, terminated her employment.

89. Defendant did not mistreat and/or terminate a Caucasian DM who failed two (2) audits, ran her stores at a high labor cost, and received two (2) failing health department scores.

90. Defendant subjected Plaintiff to discrimination because of her race (African American).

91. As a result of Defendant's conduct, Plaintiff has been deprived of income and the benefits associated with employment. The conduct described herein caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

92. Plaintiff is African American and a member of a protected class.

93. Plaintiff was, and is, a qualified employee, able to perform the essential functions of her job.

94. Roberts is a Caucasian individual.

95. After Roberts was hired by Defendant, he refused to communicate with Plaintiff regarding the maintenance, function, and staffing of her restaurants.

96. In managing the restaurants, Plaintiff was required to adhere to a specified budget.

97. Roberts ordered unnecessary maintenance supplies and services without discussing or otherwise informing Plaintiff, which generated significant bills and exceeded Plaintiff's budget.

98. Roberts ordered a new manhole cover and surrounding poles, which cost approximately five thousand dollars ($5,000.00).

99. Roberts also ordered a new oven for one (1) of Plaintiff's restaurants.

100. However, Plaintiff had planned to wait until the next budget period to repair the oven because she had already used the maintenance budget for the current period.

101. Roberts also excluded Plaintiff from staffing decisions.

102. Roberts contradicted Plaintiff's instructions to her GMs regarding restaurant hours and staffing.

103. Roberts also transferred managers and staff out of Plaintiff's restaurants, which resulted in the restaurants being understaffed.

104. Plaintiff did not become aware a staff member(s) had been transferred until she received a report regarding an employee not working a scheduled shift.

105. Roberts' interference with Plaintiff's management efforts inhibited Plaintiff's productivity and efficiency.

106. Plaintiff attempted to address the aforementioned issues with Roberts by meeting with Roberts and contacting both C. Wollan and D. Wollan.

107. Instead of addressing the issues created by Roberts, Defendant blamed Plaintiff and, on April 5, 2019, terminated her employment.

108. Defendant did not mistreat and/or terminate a Caucasian DM who failed two (2) audits, runs her stores at a high labor cost, and received two (2) failing health department scores.

109. Defendant subjected Plaintiff to discrimination because of her race (African American).

110. As a result of Defendant's conduct, Plaintiff has been deprived of income and the benefits associated with employment. The conduct described herein caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

111. Plaintiff is African American and a member of a protected class.

112. Plaintiff opposed conduct made unlawful by Title VII when, on April 2, 2019, she reported Roberts' discriminatory conduct to Defendant.

113. Plaintiff reported to C. Wollan and D. Wollan that Roberts did not mistreat white employees.

114. On April 5, 2019, Plaintiff exercised a protected right under Title VII when she submitted internal complaints via email to Defendant, wherein she again opposed Robert's discriminatory actions.

115. In Plaintiff's April 5, 2019 email, she stated that Roberts would not communicate with her, made decisions without her awareness or input, and that she was "feeling discrimination."[2]

116. On April 5, 2019, only three (3) days after Plaintiff first reported discriminatory animus, and less than twenty-four (24) hours after Plaintiff's second report, Defendant terminated Plaintiff's employment.

---

[2] During the EEOC process, Defendant altered the noted email to exclude the statement regarding discrimination.

117. Defendant terminated Plaintiff's employment in retaliation for making internal complaints regarding discrimination.

118. Plaintiff suffered extensive damages as a proximate result of the discrimination and retaliation, which were caused by Defendant's deliberate indifference to Plaintiff's federally protected rights.

119. As a result of Defendant's conduct, Plaintiff has been deprived of income and the benefits associated with employment. The conduct described above also caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT IV
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

120. Plaintiff is African American and a member of a protected class.

121. Plaintiff exercised a protected right under 42 U.S.C. § 1981, and opposed conduct made unlawful by the same, when, on April 2, 2019, she reported Roberts' discriminatory conduct to Defendant.

122. Plaintiff reported that Roberts did not mistreat white employees.

123. On April 5, 2019, Plaintiff exercised a protected right under 42 U.S.C. § 1981 when she submitted internal complaints via email to Defendant, wherein she again opposed Robert's discriminatory actions.

124. In Plaintiff's April 5, 2019 email, she stated that Roberts would not communicate with her, made decisions without her awareness or input, and that she was "feeling discrimination."[3]

125. At the time, Plaintiff believed, in good faith, that Roberts' conduct constituted race discrimination and that it violated 42 U.S.C. § 1981.

---

[3] During the EEOC process, Defendant altered the noted email to exclude the statement regarding discrimination.

11

126. On April 5, 2019, only three (3) days after Plaintiff first reported discriminatory animus, and less than twenty-four (24) hours after Plaintiff's second report, Defendant terminated Plaintiff's employment.

127. Defendant terminated Plaintiff's employment in retaliation for making internal complaints regarding discrimination.

128. Plaintiff suffered extensive damages as a proximate result of the discrimination and retaliation, which were caused by Defendant's deliberate indifference to Plaintiff's federally protected rights.

129. As a result of Defendant's conduct, Plaintiff has been deprived of income and the benefits associated with employment. The conduct described above also caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. A permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging further in its discriminatory treatment of male employees on the basis of race and sex;

B. An Order that Defendant institute and carry out policies, practices, and programs, which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a substantive policy against race and sex discrimination and retaliation in the work place;

C. Damages for mental and emotional distress in an amount determined by a jury;

D. Back pay for lost income and any other compensatory damages;

E. Reinstatement, or Front pay if the Court finds reinstatement to be impracticable;

F. Punitive damages in an amount to be determined by a jury;

G. A reasonable attorneys' fee;

H. Plaintiff's costs and expenses;

I. Interest on all monies owed; and

J. Any other relief the Court deems just and appropriate.

Respectfully submitted on this the 22nd day of May 2020.

_____
Anthony D. Michel (ASB-6809-064M)
*Attorney for Plaintiff, Veronica Heads*

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
P: (205) 980-5700
F: (205) 994-2819
anthony@wmalabamalaw.com

## JURY DEMAND

Plaintiff demands trial by struck jury.

_____
Attorney for Plaintiff

**DEFENDANT WILL BE SERVED VIA PROCESS SERVER AT THE FOLLOWING ADDRESS:**

**Paradigm Investment Group, LLC**
c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

_____
Attorney for Plaintiff

13