IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VERONICA HEADS, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION NO. 1:20-cv-284-TFM-M |
| PARADIGM INVESTMENT GROUP, LLC., | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendant's Motion to Dismiss or, in the Alternative, Stay Pending Arbitration and to Compel Arbitration* and brief in support. Docs. 4, 5, filed June 23, 2020. Defendant Paradigm Investment Group, LLC, requests the Court dismiss or, in the alternative, stay this matter and compel Plaintiff Veronica Heads to arbitrate her claims. *Id.* Having considered the motion, the evidence in support of the motion, and the relevant law, the Court finds the motion is due to be **GRANTED** as to Paradigm Investment Group, LLC's, alternative request to stay this matter and compel arbitration and **DENIED** as to its request to dismiss this matter.

### I.   JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights) as Plaintiff brings claims pursuant to 42 U.S.C. §2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981.

The Court has personal jurisdiction over Defendant Paradigm Investment Group ("Paradigm"), because Plaintiff Veronica Heads ("Plaintiff") alleges she is a resident of Alabama

and Paradigm, a foreign limited liability company, employed her to manage three (3) of their Baldwin County, Alabama fast food locations.  Doc. 1 ¶¶ 4-72; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-78, 105 S. Ct. 2174, 2181-85, 85 L. Ed. 2d 528 (1985) (explaining the requirements for specific jurisdiction over an out-of-state defendant); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984) (stating general jurisdiction requires the defendant have "continuous and systematic" contacts with the forum states); *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quoting *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)) ("Personal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process.").

Venue is proper in this Court because Plaintiff alleges a substantial part of the events or omissions that form the basis of her claims occurred in Baldwin County, which is within this Court's jurisdiction, and venue is not contested.  Doc. 1 ¶¶ 16-72; *see also* 28 U.S.C. § 1391(b)(2).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Procedural Background

Plaintiff exhausted her administrative remedies when she timely filed her charges of race and sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), which issued her a Notice of Right to Sue.  Doc. 1 ¶¶ 10-15 at 3.

Plaintiff originally filed her Complaint with this Court on May 22, 2020, within ninety (90) days of the date that she received her Notice of Right to Sue.  *Id.* ¶ 15.  Plaintiff brings claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e to 2000e(17), and 42 U.S.C. § 1981.  *Id.* ¶¶ 73-129.  On June 23, 2020, Paradigm filed the instant Motion to Dismiss or, in the Alternative, Stay Pending Arbitration and to Compel

Arbitration ("motion to compel arbitration") and brief in support, for which the Court entered a submission order. Docs. 4, 5, 8. Plaintiff timely filed her response, and Paradigm did not file a reply. Docs. 9, 10. Paradigm's motion to compel arbitration is ripe for review, and the Court finds an evidentiary hearing unnecessary.

**B.     Factual Background[1]**

Paradigm is a Hardee's franchisee that operates Hardee's restaurants in multiple Southeastern states, including Alabama. Doc. 5-1 at 2. On October 28, 2018, Plaintiff applied for a job as a District Manager with Paradigm. *Id.* at 2- 3. Plaintiff applied for the position through an online portal that is used by Paradigm for prospective employee-application generation and new-hire-onboarding purposes. *Id.* To access the online portal, Plaintiff was required to create her own unique username and password. *Id.* After Plaintiff logged in, she completed the application and submitted it electronically through the online portal. *Id.* The application that Plaintiff submitted includes a provision that states she understands and agrees, as a condition of employment, she would be "required to sign and/or agree to an arbitration agreement and/or the Company's Alternate Dispute Resolution ("ADR") Plan." *Id.* at 2-3, 12.

On November 14, 2018, Paradigm sent Plaintiff a letter that offered her a position as a District Manager who would be responsible for three (3) Hardee's locations in Alabama ("offer letter"). *Id.* at 3, 15-16. The offer letter contains an arbitration provision that states, "You agree to be bound by Paradigm's Arbitration Agreement as a condition of your employment with Paradigm." *Id.* at 15-16. Plaintiff hand-signed the offer letter on November 14, 2018, and returned it to Paradigm via email on the same date. *Id.* at 3.

---

[1] In Plaintiff's response to the instant motion, she does not specifically challenge Paradigm's "Background Facts," which are closely followed in the Court's "Factual Background." *See* Doc. 5 at 2-7.

Potential new hires for Paradigm are required to electronically complete standard paperwork as part of the new-hire-onboarding process. *Id.* Potential new hires are sent an email that contains a link to the online portal, and they must click the link to reach the onboarding task manager. *Id.* Plaintiff received such an email at the email address that she provided to Paradigm when she submitted her job application. *Id.* Plaintiff was required to complete the onboarding process, during which employee information is gathered and various documents are signed, including payroll tax withholding forms, company policies, and an arbitration agreement. *Id.* As part of the onboarding process, Plaintiff was required to provide her Social Security number, date of birth, address, and other identifying information. *Id.*

On November 14, 2018, the same day that Plaintiff returned her signed offer letter, she logged in to the online portal to sign the new-employee-onboarding paperwork that is required by Paradigm. *Id.* at 3-4. Plaintiff entered her unique username and password to log in to the online portal and completed her onboarding paperwork. *Id.* The onboarding paperwork includes: (1) Form I-9 (authorization to work); (2) Form W-4 (federal payroll taxes); (3) Form A-4 (state payroll taxes); (4) Paradigm's cash-handling policy; (5) 401k Plan Disclosure Statement; (6) Insurance Options: (7) Paradigm's Rules, Regulations, and Procedures; (8) Paradigm's Employee Guide to Health and Safety; (9) EEO and Anti-Harassment Policy; (10) Paradigm's Supplemental Management Guide; (11) Paradigm's Employee Handbook; and (12) an Alternative Dispute Resolution Plan and Arbitration Agreement ("arbitration agreement"). *Id.* Plaintiff digitally signed each of the aforementioned onboarding documents. *Id.* at 3-4, 18-138.

The arbitration agreement provides in pertinent part:

> A.   It is agree that any and all disputes, claims, (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Agreement, the Plan, or to Employee's employment with Employer shall be submitted to final and binding arbitration. The claims covered by this

>    agreement to arbitrate (the "Covered Claims") include, but are not limited to, those which related to the following:
>
>    . . .
>
>    f.  Employee's employment with Employer, including the terms and conditions thereof and all acts or occurrences relating to any termination of such employment, including but not limited to wrongful discharge claims for wages or other compensation due, claims for breach of any contract or covenant (express or implied), tort claims, claims for discrimination (including, but not limited to race, sex, religion, national origin, ancestry, age, genetics, veteran status, marital status, or medical condition, physical or mental disability/handicap), claims of harassment (including workplace and sexual harassment) or claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

*Id.* at 150-52.

During the online portal's electronic-onboarding process, each new employee is presented with a series of pages that must be viewed and completed in sequential order; it is not possible to advance to the next page without acknowledging the preceding page. *Id.* at 5. During the onboarding process, the new employee is shown a PDF copy of Paradigm's Alternative Dispute Resolution Plan, and below it, the new employee is required to check a box that is beside the statement "I have read and agree to the above information" and then click a button that is labeled "Acknowledge and Continue" to proceed with the onboarding process. *Id.* After, the new employee is shown a PDF copy of the arbitration agreement, and below it, the new employee must check a box that is beside the statement "I have read and agree to the above information" and then click a button that is labeled "Acknowledge and Continue" to proceed with the onboarding process. *Id*. During the onboarding process, Plaintiff also signed Paradigm's Rules, Regulations, and Procedures, which contains provisions that state Plaintiff had an opportunity to read and review the arbitration agreement and agreed to follow the procedures in the arbitration agreement to resolve any employment-related disputes. *Id.* at 5, 154-55.

### III. STANDARD OF REVIEW

> [A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if "there is no genuine dispute as to any material fact" concerning the formation of such an agreement. FED. R. CIV. P. 56(a). A dispute is not "'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986), *cert. denied*, - U.S. -, 136 S. Ct. 410, 193 L. Ed. 2d 317 (2015). . . . "[C]onclusory allegations without specific supporting facts have no probative value" for a party resisting summary judgment. *See Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quotation marks omitted).

*Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

Therefore, a motion to compel arbitration is "summary-judgment-like" in nature, and an order compelling arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate." *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (per curiam)). The Court will view the evidence in the light most favorable to Plaintiff. *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)).

### IV. DISCUSSION AND ANALYSIS

In the case at hand, Plaintiff acknowledges in her response to the motion that she signed an Arbitration Agreement and does not oppose the request to stay the litigation, but does oppose dismissal. Doc. 9 at 2. As the motion is "summary-judgment-like," even though the alternative request is unopposed, the Court will provide a cursory analysis to ensure disposition utilizing the alternative stay request is appropriate.

> In 1925, Congress enacted the [Federal Arbitration Act ("FAA")] "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546

U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006), and to declare a "'national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 983, 169 L. Ed. 2d 917 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984)). Three sections of the FAA play particularly important roles in achieving that purpose. 9 U.S.C. § 2 – the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) – provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable. 9 U.S.C. § 3 directs courts to stay their proceedings in any case raising a dispute on an issue referable to arbitration. And 9 U.S.C. § 4 "authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with [an] arbitration agreement." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987) (quoting 9 U.S.C. § 4).

As these provisions embody the "liberal federal policy favoring arbitration agreements," *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted), "doubts concerning the *scope* of arbitrable issues should be resolved in favor or arbitration." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (emphasis added). This "presumption," however, "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* (citation omitted).

When . . . a party moves a district court to compel arbitration under the FAA, the court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Bazemore*, 827 F.3d at 1333 (citation and quotation marks omitted). If, on the other hand, the making of the agreement is in issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

As in a traditional summary judgment motion, an examination of substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)). Thus, just as "state law generally governs whether an enforceable contract exists," state law generally governs whether an enforceable "agreement to arbitrate exists" as well. *Caley*, 428 F.3d at 1368. To prove the existence of a contract under Alabama law, the party seeking to enforce the contract must prove by a preponderance of the evidence: "an offer[,] an acceptance, consideration, and mutual assent to terms essential to the

formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

*Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1345-46 (11th Cir. 2017) (footnote omitted).

Additionally, under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." *Serv. Corp. Int'l v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003). "A party seeking to compel arbitration has the burden of proving:  (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce." *Kenworth of Birmingham, Inc. v. Langley*, 828 So. 2d 288, 290 (Ala. 2002).

As to whether Plaintiff contracted to arbitrate her instant claims, Paradigm argues she agreed to be bound by Paradigm's arbitration agreement as a condition of her employment with Paradigm when she physically signed the offer letter and electronically signed the arbitration agreement and other document during the new-hire-onboarding process.  Doc. 5 at 8-11.  As to whether the contract evidences a transaction that affects interstate commerce, Paradigm argues it is a California limited liability company that regularly conducts business in multiple states, employs individual in multiple states, its restaurants serve customers who travel in interstate commerce, and its restaurants regularly receive supplies and equipment from out-of-state.  *Id.* at 12-13.  Plaintiff admits she signed the arbitration agreement as a condition of her employment and does not dispute the transaction affects interstate commerce.  *See* Doc. 9 at 1-2.

Finally, Paradigm argues Plaintiff, per the terms of the arbitration agreement, is required to arbitrate her instant claims.  Doc. 5 at 10.  Plaintiff asserts she understands her instant claims are covered by the arbitration agreement and does not oppose Paradigm's requests to compel arbitration and stay this matter pending arbitration.  Doc. 9 at 2.

Therefore, the Court finds as a matter of law, Plaintiff and Paradigm entered into an

arbitration agreement that covers her instant claims, and Paradigm's request to compel Plaintiff to arbitrate her instant claims is granted.

As to whether the Court should dismiss or stay this matter pending the arbitration of Plaintiff's instant claims, as requested by Paradigm, the FAA provides the federal courts "shall on application of one of the parties stay" a proceeding where any issue in that proceeding is referable to arbitration. 9 U.S.C. § 3; *see also Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1369 (11th Cir. 2005) ("[T]he FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding 'is referable to arbitration under an *agreement in writing* for such arbitration… .'") (emphasis in original); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.").

Therefore, the Court will deny Paradigm's request to dismiss this matter and grant its alternative request to stay this matter pending arbitration.

### V.     CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

(1)     Defendant's Motion to Dismiss or, in the Alternative, Stay Pending Arbitration and to Compel Arbitration (Doc. 4) is **GRANTED in part and DENIED in part**. The motion is granted as to its requests to stay this matter and compel arbitration, but denied as to its request to dismiss this matter;

(2)     This matter is **STAYED** pending the outcome of arbitration, and the Clerk of Court is **DIRECTED** to place this matter on the administratively closed docket; and

(3) The parties are **ORDERED** to file with the Court a joint notice within seven (7) days of the completion of arbitration.

**DONE** and **ORDERED** this the 7th day of August 2020.

                                                    s/Terry F. Moorer
                                              TERRY F. MOORER
                                              UNITED STATES DISTRICT JUDGE